UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ORTIZ-KEHOE #256263,

    Plaintiff,

v.                                                      Hon. Hala Y. Jarbou

LARRY S. ROYSTER, et al.,                   Case No. 1:23-cv-532

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's pro se complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, and pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **DISMISS** Plaintiff's complaint for failure to state a claim and because Defendants are immune from Plaintiff's official and personal capacity claims for monetary damages.

### I. Background

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Michigan. He sues Michigan Supreme

Court Chief Clerk Larry S. Royster and Michigan Supreme Court Deputy Clerk Julie Clement in both their official and individual capacities.

Following a jury trial in March 1997 in the Calhoun County Circuit Court, Plaintiff was convicted of first-degree murder in connection with the 1993 disappearance of Rose Larner. He was sentenced to life imprisonment without the possibility of parole. *Ortiz-Kehoe v. Chippewa Corr. Facility Warden*, No. 361179, 2022 WL 17724460, at *1–2 (Mich. Ct. App. Dec. 15, 2022). The Michigan Court of Appeals affirmed the conviction and sentence, and the Michigan Supreme Court denied Plaintiff's application for leave to appeal. *Id.* at *2.

On January 27, 2022, Plaintiff filed a complaint for writ of habeas corpus in the Chippewa County Circuit Court challenging, among other things, the appointment of a special prosecutor and a multi-county grand jury that, he claimed, destroyed the Calhoun County Circuit Court's jurisdiction over him. *Id.* The Chippewa County Circuit Court denied relief on March 31, 2022. (ECF No. 1-1 at PageID.62–66.) Plaintiff appealed to the Michigan Court of Appeals, which affirmed the circuit court's denial on December 15, 2022. *Id.* at *1.

Plaintiff missed his deadline to file an application for leave to appeal to the Michigan Supreme Court under Mich. Ct. R. 7.305(C)(2), which was January 26, 2023. (ECF No. 1-3 at PageID.146.) On February 14, 2023, however, he filed an original complaint for a writ of habeas corpus in the Michigan Supreme Court. In both his complaint and his letter to the clerk's office enclosing his complaint, Plaintiff asserted that he was asserting his habeas complaint directly with the Michigan Supreme Court pursuant to Michigan Court Rule 3.303(A)(3) and Mich. Comp. Laws § 600.4304. (ECF Nos. 1-1 at PageID.12, 1-2 at PageID.144.) On February 27, 2023, Defendant Clement sent Plaintiff a letter returning his habeas complaint and his check for the filing fee and explaining that Plaintiff had missed his filing deadline of January 26, 2023, to file his

application for leave to appeal from the court of appeals' December 15, 2022 order affirming the denial of his habeas petition. Defendant Clement further noted that the Michigan Court Rules "do not allow any exceptions to the deadline for filing an application for leave to appeal." (ECF No. 1-3.)

On March 2, 2023, Plaintiff sent a letter to the clerk stating that Clement had erroneously treated his submission as an application for leave to appeal, when in fact it was an original habeas complaint pursuant to Mich. Ct. R. 3.303 and Mich. Comp. Laws § 600.4304. (ECF No. 1-4.) On March 8, 2023, Defendant Royster sent Plaintiff a letter responding to his March 2, 2023 letter. Defendant Royster noted that, although Plaintiff had labeled his submission a complaint, it was, in effect, an appeal of the court of appeals decision. Defendant Royster cited the inclusion of the circuit court and court of appeals docket numbers in the complaint, the fact that Plaintiff had named the same defendant he had named in the circuit court and court of appeals filings (even though Plaintiff had since been transferred to another facility in a different county), and the similarity of issues raised in the Michigan Supreme Court complaint and Plaintiff's court of appeals brief. Defendant Royster also noted that pursuant to Mich. Ct. R. 7.306(A)(1), an original action, such as a habeas complaint, can only be filed directly with the Supreme Court when an appeal could not have been filed under Mich. Ct. R. 7.305, which was not the situation in Plaintiff's case. (ECF No. 1-5.)

On April 3, 2023, Plaintiff filed a Motion to Direct the Clerk to File [Plaintiff's] Original Complaint for Habeas Corpus. (ECF No. 1-6.) On April 10, 2023, the Office of the Clerk returned Plaintiff's motion to him, stating that further correspondence regarding the matter would be "discarded without response." (ECF No. 1-7.)

Plaintiff alleges that Clement and Royster violated his First Amendment right of access to the courts and to petition the government for redress of his grievances by refusing to file his original habeas complaint. (ECF No. 1 at PageID.5.)

## II. Discussion

### A. Immunity

Two forms of immunity apply in this case. First, Plaintiff's official capacity claims for damages are barred by the Eleventh Amendment. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment bar to suits against states in federal court for damages, *see Quern v. Jordan*, 440 U.S. 332, 342 (1979), extends to suits for damages against state officials in their official capacities. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (noting that Eleventh Amendment immunity "applies to actions against state officials sued in their official capacity for money damages") (citing *Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 623 (2002)). Because the Michigan Supreme Court is an arm of the State of Michigan, Plaintiff's official capacity claims against Defendants for damages are barred by the Eleventh Amendment. *See Smiles v. Royster*, No. 18-1440, 2018 WL 4998196, at *2 (6th Cir. Oct. 1, 2018) (Eleventh Amendment barred official capacity damage claims against Michigan Supreme Court Chief Clerk and Deputy Clerk).

Plaintiff's individual capacity claims for damages are separately barred by quasi-judicial immunity. It is well established that a judge is absolutely immune from suit seeking monetary relief, so long as the judge was performing judicial functions. *See Mireles v. Waco*, 502 U.S. 9, 9–10 (1991). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Id.* at 11. The "immunity applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights." *Stern v. Mascio*, 262 F.3d 600, 606 (6th Cir. 2001). A judge is not immune (1) where the judge's alleged actions were not taken in the judge's judicial capacity, or (2) where the actions, although judicial in nature, were taken in the complete absence of jurisdiction. *Mireles*, 502 U.S. at 11–12. "[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). "Whether an act is judicial depends on the nature and function of the act, not the act itself." *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997) (internal quotation marks omitted) (quoting *Mireles*, 502 U.S. at 13).

Courts have extended absolute judicial immunity to non-judicial officers who perform "quasi-judicial" functions. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.* (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989), *abrogated on other grounds by Antione v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993)). In determining whether an individual is entitled to quasi-judicial immunity, courts employ a "functional" approach, looking "to the nature of the

function performed, not the identity of the actor who performed it." *Id.* (citations and internal quotation marks omitted). Both the Sixth Circuit and this Court have determined that Michigan Supreme Court clerks act on behalf of the court in rejecting filings for failure to comply with statutes and court rules. *See Smiles*, 2018 WL 4998196, at *2 (chief and deputy clerks entitled to quasi-judicial immunity for rejecting the plaintiff's application for leave to appeal because the plaintiff had outstanding filing fees and subsequently rejecting the application as untimely); *Holt v. Hoffner*, No. 1:15-cv-1348, 2016 WL 403800, at *2 (W.D. Mich. Feb. 3, 2016) (deputy and chief clerk entitled to quasi-judicial immunity for rejecting the plaintiff's habeas complaint on the ground that an original complaint is not properly filed in the Michigan Supreme Court). Accordingly, Plaintiff may not maintain an action against Royster and Clement for money damages.

Finally, Plaintiff's official-capacity claim for injunctive relief is subject to dismissal. Although in the past claims for declaratory and injunctive relief "have been permitted under 42 U.S.C. § 1983 against judges acting in their official capacity," *Nollet v. Justices of Trial Ct. of Commonwealth of Mass.*, 83 F. Supp. 2d 204, 210 (D. Mass 2000), *aff'd*, 248 F.3d 1127 (1st Cir. 2000) (citing *Pulliam v. Allen*, 466 U.S. 522 (1984)), pursuant to the Federal Courts Improvement Act passed in 1996, Section 1983 was amended to preclude injunctive relief against a judicial officer "for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. While Defendants are not judges, they are judicial officers within the meaning of the statute. *Smiles*, 2018 WL 4998196, at *3 (applying Section 1983 prohibition on injunctive relief to Chief Clerk Royster and Deputy Clerk Meyer); *Meeks v. Michigan Dep't of Corrs.*, No. 1:20-cv-839, 2020 WL 5554872, at *7 (W.D. Mich. Sept. 17, 2020) (holding that clerks and administrators are entitled to the same

protection from injunctive claims under Section 1983 as judges or justices). Here, because Plaintiff fails to allege that a declaratory decree was violated or that declaratory relief was unavailable, his request for injunctive relief must be dismissed. *Id.*

  B.  **Failure to State a Claim**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

An inmate has a constitutional right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 823 (1977); *Knop v. Johnson*, 977 F.2d 996, 1002–03 (6th Cir. 1992). To establish a claim for denial of access to the courts, a prisoner must demonstrate actual prejudice to pending or contemplated litigation. *Lewis v. Casey*, 518 U.S. 343, 351–52 (1996); *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). In other words, a prisoner must allege that he suffered "an actual litigation related injury or legal prejudice because of the actions of the defendants." *Erdman v. Martin*, 52 F. App'x 801, 803 (6th Cir. 2002) (citing *Lewis*, 518 U.S. at 349–51). A prisoner must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Harbin-Bey*, 420 F.3d at 578. Examples of actual prejudice include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline. *Lewis*, 518 U.S. at 351; *Harbin-Bey*, 420 F.3d at 578. The right of access to the courts extends only to direct appeals in criminal cases, habeas petitions, and civil rights actions filed under 42 U.S.C. § 1983 challenging conditions of confinement. *Lewis*, 518 U.S. at 354.

Plaintiff's claim is subject to dismissal because he fails to demonstrate that he was prejudiced by Defendants' failure to accept his original habeas complaint for filing with the Michigan Supreme Court. Plaintiff's reliance upon Michigan Court Rule 3.303(A)(3) to support his claim of a right to file an original habeas petition with the Michigan Supreme Court is misplaced. To begin, the relevant provision of Rule 3.303 governing Plaintiff's circumstances provides:

> The action must be brought in the county in which the prisoner is detained. If it is shown that there is no judge in that county empowered and available to issue the writ or that the judicial circuit for that county has refused to issue the writ, the action may be brought in the Court of Appeals.

Mich. Ct. R. 3.303(A)(2). As explained in *Sosby v. Brown*, No. 2:21-cv-54, 2021 WL 1152893 (W.D. Mich. Mar. 26, 2021), Rule 3.303(A)(2) requires a state prisoner to first bring his habeas

8

action in the county in which he is detained. *Id.* at *5 (citing *Moses v. Department of Corrs.*, 274 Mich. App. 481, 483–85 (2007), and *Kato v. Department of Corrs.*, 504 Mich. 961, 961 (2019) (Cavanagh, J. concurring) ("[R]eading the two rules[, Mich. Ct. R. 3.303(A)(2) and Mich. Ct. R. 7.203(C)(3),] together, it appears the Court of Appeals may only 'entertain' an action for habeas corpus if the action was first 'brought' in the county in which the prisoner is detained—presumably in circuit court.")). A prisoner may appeal the circuit court's denial of the habeas complaint to the Michigan Court of Appeals, and if unsuccessful before that court, may seek leave to appeal that denial to the Michigan Supreme Court. *Id.* (citing *Jefferson v. Michigan Reformatory Warden*, No. 341955, 2018 WL 5276245, at *1 n.1 (Mich. Ct. App. Oct. 18, 2018), and *Goldman v. Department of Corrs.*, 501 Mich. 870 (2017)). Alternatively, after first seeking relief in the appropriate circuit court, a prisoner may file an original complaint for a writ of habeas corpus with the Michigan Court of Appeals and may file an application for leave to appeal to the Michigan Supreme Court if the court of appeals denies relief. *See Calhoun v. Steward*, No. 1:21-cv-35, 2021 WL 800564, at *5 (W.D. Mich. Mar. 1, 2021) (finding that the federal habeas petitioner failed to exhaust his claims in state court by filing his habeas complaint with the Michigan Court of Appeals without first presenting them to the appropriate circuit court); *Clay v. Haas*, No. 2:17-CV-11522, at *1 (E.D. Mich. May 26, 2017); *Strickland v. Lafler*, No. 09-10472, 2009 WL 426611, at *2 (E.D. Mich. Feb. 19, 2009) (dismissing federal habeas petition without prejudice because the petitioner still had an avenue for relief in state court by filing a habeas complaint in the Michigan Court of Appeals and then seeking leave to appeal from the Michigan Supreme Court) (citing Mich. Ct. R. 7.301(A)(2); Mich. Ct. R. 7.302). Here, rather than filing a habeas complaint with the Michigan Court of Appeals, Plaintiff appealed the circuit court's judgment to the Michigan Court of Appeals

and, as set forth above, could have sought leave to appeal to the Michigan Supreme Court, but he missed the filing deadline.

Nothing in Rule 3.303(A)(2) suggests that a prisoner may file an original habeas complaint with the Michigan Supreme Court. Instead, Plaintiff asserts that another provision authorized his original habeas filing:

> A prisoner detained in a county jail for a criminal charge, who has not been sentenced to detention by a court of competent jurisdiction, may be removed from detention by a writ of habeas corpus to inquire into the cause of detention only if the writ is issued by the court in which the prisoner would next appear if the criminal process against the prisoner continued, or by the judicial circuit for the county in which the prisoner is detained. This subrule does not limit the power of the Court of Appeals or Supreme Court to issue the writ.

Mich. Ct. R. 3.303(A)(3). This provision applies to pretrial detainees who have yet to be sentenced. It clearly did not apply to Plaintiff's circumstances at the time he sought to file his original habeas complaint with the Michigan Supreme Court, as he was not "detained in a county jail." Instead, he was incarcerated with the MDOC at LCF—a state facility. (ECF No. 1-2.)

Accordingly, because Plaintiff had no right to file an original habeas complaint with the Michigan Supreme Court, Plaintiff fails to show that he suffered actual injury as a result of Defendants' rejection of that complaint.

### III. Conclusion

For the foregoing reasons, I recommend that the Court dismiss Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A for failure to state a claim and because Defendants are immune from Plaintiff's official and personal capacity claims for monetary damages.

The Court must also decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Good faith is judged objectively, *Coppedge v. United States*, 369 U.S. 438, 445 (1962), and an appeal is not taken in good faith if the issue presented is frivolous, defined as lacking an

arguable basis either in fact or law. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). For the same reasons that I recommend dismissal of the action, I discern no good faith basis for an appeal and recommend that, should Plaintiff appeal this decision, the Court assess the $505.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610-11.

Finally, if the Court adopts the foregoing recommendation to dismiss, the dismissal will be a dismissal as described by 28 U.S.C. § 1915(g).

Date:  May 31, 2023                                    /s/ Sally J. Berens
                                                       SALLY J. BERENS
                                                       U.S. Magistrate Judge

**NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).